WHITE STAR BUS LINE, INC., Petitioner, *v.* DISTRICT COURT OF SAN JUAN, Respondent.

No. 1131. Argued February 21, 1938.—Decided March 16, 1938.

*C. Iriarte, F. Fernández Cuyar* and *H. González Blanes* for petitioner. *J. Valldejuli Rodríguez* for interveners. *T. Torres Pérez* for The Public Service Commission.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

The owners and drivers of certain automobiles, licensed as public carriers, appealed to the district court from an order of the Public Service Commission designed to eliminate competition with the White Star Bus Line, Inc. In the district court appellants obtained an interlocutory order of supersedeas. The bus line then obtained from this Court a writ of certiorari to review the interlocutory order of supersedeas.

Petitioner relies on the following alleged errors of procedure: that the district judge annulled petitioner's exclusive franchise as well as the order appealed from; that the district judge's decision, holding the order of the Public Service Commission to be unreasonable and oppressive, prejudged the appeal on its merits and deprived petitioner of its property without due process of law, and of its right to appeal from a final judgment; that the district judge disregarded and violated Section 38 of the Organic Act, and Sections 2, 48 and 49 of the Public Service Act of Puerto Rico; that the district judge erred in holding that the commission could not make the order appealed from without a hearing or notice to appellants; that the district judge ignored and disregarded the provisions of Section 75 of the Public Service Act; that the district judge based his order on the ground that the Public Service Commission interfered with the free exercise of a business or occupation and on the ground that the regulation of the use of streets is a municipal function; that the district judge ordered the supersedeas without any proof that the order of the Public Service Commission would cause appellants any great and irreparable damage, and also violated the doctrine of balance of convenience; that the procedure adopted by the district judge is not in accordance

with the principles of law and equity, and amounts to an abuse of discretion.

■ Petitioner's franchise, "subject to the limitations, conditions, and restrictions that are now, or may hereinafter (sic) be imposed by law and to those hereinafter specifically set forth" granted it exclusive authority "to establish, maintain and operate a motor-bus service for hire for the transfer and transportation of passengers between and within the municipalities of San Juan and Río Piedras and intermediate points." It provided that the authority so granted should "apply to local transportation wholly within and between the Municipalities of San Juan and Río Piedras only" and should "not be considered to prohibit the granting of authority to other public service companies to operate motor buses on routes from points in municipalities other than San Juan and Río Piedras passing through, into or out of the said Municipalities of San Juan and Río Piedras." It was specifically stipulated and agreed that the "schedules, routes and conditions of service" should be "at all times subject to regulation by the Public Service Commission."

In two communications addressed to the Public Service Commission August 5, 1932, the White Star Bus Line asserted its exclusive right to the transportation of passengers "between San Juan, Río Piedras, Martín Peña, Loíza, Fernández Juncos, Park and *vice versa.*" It stated that thirteen designated individuals, who had not complied with certain regulations, were transporting passengers at regular bus rates between San Juan and Río Piedras. It requested a suspension of the competing service over this route. In a like communication dated August 9, the White Star Bus Line complained of similar competition by six other persons along the routes "between San Juan, Río Piedras, Fernández Juncos Ave., Martín Peña, Loíza, Park and *vice versa.*" It requested a suspension of this service.

The pertinent portion of an order of the Commission dated October 15, 1932, reads as follows:

"It is ORDERED FURTHERMORE, that no motor vehicle, not previously authorized by this Commission shall engage in regular and daily public transportation through payment of fares, over the routes served by virtud of the franchise granted to the White Star Bus Line, Inc., that is, San Juan to Río Piedras, Barrio Obrero, Loíza Street, Park Street, Fernández Juncos Avenue and Ciudad Nueva and the same is hereby prohibited."

This paragraph was amended March 16, 1935, to read as follows:

"And it is ordered furthermore that no motor vehicle not previously authorized by the Commission, shall act, serve, or operate, as a public carrier, in the transportation of passengers at a price per seat, offering and rendering its service to the public in general, for hire at a price per seat, between points included in the routes served by the White Star Bus Line, Inc. and the same is hereby prohibited.

"The fact that a motor vehicle may transport one or more passengers between two points included in the route served by the White Star Bus Line, Inc., at a price per seat shall constitute prima facie evidence of a violation of the provisions of this order."

As again amended January 4, 1938, it reads:

"AND IT IS ORDERED, FURTHERMORE, that no motor vehicle not previously authorized by this Commission may act, serve, or operate as a public carrier in the transportation of passengers for hire per seat offering and rendering its service to the public in general, between the municipalities of San Juan or Río Piedras, or within the municipalities of San Juan or Río Piedras, or between intermediate points and the same is hereby prohibited. The fact that a motor vehicle acts as a public carrier, transporting passengers for hire per seat from one place to another between the municipalities of San Juan and Río Piedras, or within the municipalities of San Juan or Río Piedras, or between intermediate points, will constitute prima facie evidence of a violation of the provisions of this order."

The petition of appellants in the district court was for an interlocutory order which would suspend the effects of the order appealed from, pending a hearing of the appeal on its merits. The district judge did not annul either the bus line's exclusive franchise or the order appealed from.

He merely granted the petition wherein appellants prayed for an interlocutory order, fixed the amount of a bond to be furnished by appellants in favor of The People of Puerto Rico in order to secure the payment of any damage result- ing from suspension of the order, in case the order should be finally affirmed, and provided that the order of suspension should not take effect prior to the approval of such bond. Here, of course, we are speaking of the interlocutory order itself, not of the reasoning on which that order was based. Conceding, for the sake of argument, that the effect of this order was to deprive the bus line of such benefit and advan- tage as it would have derived from the monopolistic feature of its franchise, pending a final determination of the appeal on its merits, it does not follow that the court erred in grant- ing appellants' petition for an interlocutory order in accord- ance with the provisions of Section 80 of the Public Service Act. (See Laws of 1917, Vol. II, p. 528 and Laws of 1935, p. 180.)

It may be conceded that the district judge, in stating his reasons for issuing the interlocutory order, should not have expressed an unqualified opinion as to the unreason- ableness and invalidity of the order appealed from. It may be conceded that if the district judge went too far in pre- judging the outcome of the appeal, this was an error of procedure, not merely a judicial error. It does not follow that the interlocutory order itself was an error of procedure.

Section 80 of the Public Service Act, supra, pro- vides that:

"No appeal from any order of the commision shall in any case operate as a supersedeas of the order appealed from, unless the aforesaid proper court shall, by an interlocutory order, make said appeal as a supersedeas, by the filing of a bond and after a hearing to that effect; . . ."

That is the only limitation placed by this Section upon the discretion of the court as far as the question now under con- sideration is concerned. In granting or refusing a super-

sedeas to take effect upon approval of the bond, the district judge has at least as much discretion as he would exercise in granting or refusing an injunction *pendente lite* in a suit to restrain the enforcement of an order made by the commission. "To warrant an injunction *pendente lite* it must appear that there is a reasonable probability that complainant will prevail upon final hearing." 51 C.J. 88, Section 162; *Cambridge Electric Light Co.* v. *Atwill*, 25 Fed. (2d) 485; *Yangco* v. *Board of Public Utility Commissioners*, 31 Phil. Rep. 535, 539.

As pointed out by the Supreme Court of the United States in *Public Service Commission* v. *Wisconsin Telephone Co.*, 289 U.S. 67, 70: "An application for interlocutory injunction does not involve a final determination of the merits." A definite conclusion that the order appealed from is unreasonable and not in conformity with law sufficiently indicates "a reasonable probability" in the mind of the district judge that appellants herein "will prevail upon final hearing." Hence, unless the granting of a supersedeas under Section 80, *supra*, is to be governed by a different rule, the interlocutory order should not be reversed merely because the district judge, provisionally at least prejudged the merits of the appeal. We are unwilling, however, to impute to the district judge any intention of foreclosing further discussion of the questions decided by him, and a more deliberate consideration of those questions after a hearing of the appeal on its merits. The interlocutory order itself negatives the idea of any such intention and we must assume that the bus line, if entitled to an affirmance of the order appealed from, may yet obtain a judgment to that effect in the district court. We cannot agree that the bus line has been deprived of its property without due process of law, and of its right to appeal from a final judgment.

The third assignment—that the district court disregarded and violated Section 38 of the Organic Act, and Sections 2, 48 and 49 of the Public Service Act—rests upon

the contention that the judge erred in holding that the order appealed from amounted to an attempted amendment of "An Act to regulate the operation of motor vehicles in Puerto Rico and for other purposes," approved April 13, 1916. (Laws of that year, p. 140). In view of the fact that this and some other questions sought to be raised by petitioner in the present certiorari proceeding are still pending final determination in the district court, we abstain from expressing any opinion as to the merits thereof.

 The sixth assignment, however, to the effect that the district judge ordered the supersedeas without any proof that the order of the Public Service Commission would cause appellants any great and irreparable damage, and also violated the doctrine of balance of convenience raises a question of procedure which, if adequately developed, might or might not have demanded more serious consideration than we shall give it at this time.

The bus line in its brief filed in the district court, said:

"The appearing party alleges that it is an indispensable and essential requisite, before this Honorable Court may be able to issue the order of supersedeas prayed for, that there be submitted to the tribunal evidence sufficient to justify the conclusion that the appellants would suffer great and irreparable damages if said order is not suspended. In the absence of such proof the court can not, and should not, issue the supersedeas."

In a motion for rehearing, the bus line pointed out, as one of the errors complained of, that the district court had not passed upon the questions raised by the bus line in its answer and in its brief. The judge in disposing of this motion said.

"Finally, it is alleged that this court erred in not deciding nor considering the allegation made as to the word 'conveniences,' nor followed the rule to the effect that in order to issue the supersedeas, there must be submitted to the court evidence to show that the appellants would suffer great and irreparable damages; all that being in disregard of the cases cited by the petitioner.

"We don't have access to the two cases cited: *Queens Borough Gas & Electric Co.* v. *Maltbie,* 3 P.U.R. (N.S.) 381, 271 N. Y. Supp. 646, and *Kings County Lighting Co.* v. *Maltbie;* P.U.R. 1933 B. 337; but we are certain, in view of the title of those cases, that in no way are those cases applicable to situations like the one in this case."

None of the parties concerned has filed a brief in this court.

In *Matter of Kings County Lighting Co.* v. *Maltbie,* reported in 152 Misc. 45, the Supreme Court of Albany County at page 46 said: (Italic ours)

"The Commisison has the power to authorize, in a rate proceeding, an immediate, reasonable, temporary increase or decrease pending a final determination of the price to be thereafter charged by any person or corporation subject to its rate fixing jurisdiction. (Pub. Service Law, section 72.) Such temporary rate must be reasonable and not confiscatory during such temporary period. Its suspension may be directed by the court by stay only where it appears that great and irreparable damage would by its operation. *(Pub. Service Law, section 23.)*"

We do not have before us the New York Public Service Law. In *Matter of People's Gas & Electrict Co.,* 122 Misc. 285 at page 286, however, we find the following:

"Subsequently to the hearing of this motion the counsel for the public service commission addressed a letter to the court, calling the court's attention to subdivision 2 of Section 23 of the Public Service Commission Law, which reads as follows: '2. No order staying or suspending an order of the commission fixing any rate, fare or charge or joint rate, fare or charge shall be made by the supreme court otherwise than upon notice and after hearing; and if the order of the commission is suspended, the order suspending the same shall contain a specific finding based upon evidence submitted to the court and identified by reference thereto, that great and irreparable damage would otherwise result to the petitioner and specifying the nature of the damage,' and assigning said section as a reason for not granting said stay.

"It does not seem to me that subdivision 2 of Section 23, above quoted, means that the court which grants a certiorari order pur-

suant to Section 78 of the Civil Practice Act should grant a stay only after another trial. In *People ex rel. Croker* v. *Sturgis*, 39 Misc. Rep. 448, 450, the court says: 'That it was not the purpose of the Legislature that the judge of whom the stay is asked should in any case, grant it merely because he discovers an error of law. . . Such an intermediate or half-way interference with the functions of the appellate tribunal would be as unwarranted as it is uncontemplated.' Nor could the legislature have intended that there could be no suspension of rates under a certiorari order, because if that had been the legislative intent it would have so provided. Therefore, what the legislature undoubtedly intended by subdivision 2 of Section 23 of the Public Service Commission Law was that there must be evidence submitted to the court on the part of the relator showing that if the relator's contention be upheld by the Appellate Division, great and irreparable damage would result to the relator and specifying the nature of the damages.''

Idaho, it seems, has a similar but broader enactment. See *Mountain View Rural Tel. Co.* v. *Interstate Utilities Comm.*, 38 Pac. (2d) 40, 42. Our Public Service Act contains no such requirement. Whether, in the absence of any expression of the legislative will, the instant case should be governed by the principles underlying the statutory provisions of New York and Idaho is another question. For the purposes of this opinion it may be conceded that in a case of this kind and in the absence of any other good cause shown, some showing as to irreparable injury should be required as a condition precedent to the granting of an interlocutory order of supersedeas. See 3 C.J. 1390, Section 1411.

Appellants in their verified petition for an interlocutory order of supersedeas alleged: that they and other licensed common carriers were being arrested and prosecuted for violations of an *ultra vires* order of the Public Service Commission; that their cars were being seized and the operation thereof was being interfered with; that their liberty was imperiled. The truth of these averments except that as to the invalidity of the order of the Public Service Commission was—for want of a sufficient denial—admitted by the bus line. The district judge sustained the contention of appel-

lants as to the invalidity of the order of the Public Service Commission. If the district judge was right in his tentative conclusion, the admitted facts amounted to irreparable injury within the meaning of that phrase as used with reference to jurisdictional questions in course of equity. In any event, a showing that the injuries which appellants would suffer before a final decision could be reached would be irreparable, coupled with a probability that such final decision in the district court would be in their favor, was enough to justify the granting of a supersedeas to take effect upon the furnishing of a bond in an amount designated by the court.

From the bus line's answer we take the following extract:

"The petitioner alleges that if this court decrees the suspension of the order issued by the Public Service Commission on January the 4th, 1938, it would suffer considerable damages, inasmuch as it would be illegally deprived of its property, while if, on the contrary, said order remains effective, the damages suffered by the three petitioners would be much less, and hence, considering that the Public Service Act expressly provides that the orders of the Public Service Commission shall be presumed to be correct, valid and reasonable, and in view of the absolute prohibition contained in Section 80 of said Act, to the effect that no appeal from an order shall operate as a supersedeas, the rule of the balance of conveniences requires this Honorable Court to deny the supersedeas prayed for."

At the hearing in the district court, the bus line offered no evidence in support of this contention.

The bus line in its brief filed in the district court said:

"2. The appearing party, the White Star Bus Line, Inc., alleges that, in any case, this Honorable Court should not grant the supersedeas prayed for, because, besides the fact that no evidence was offered as to the damages which the appellants would suffer if the order remains effective during the appeal, the doctrine of the balance of conveniences requires this Court to refuse to grant said supersedeas, because such supersedeas would cause great damages to this appearing party, as it appears from the record (record of the Public Service Commission, complaints presented before said body, reports of its investigators and the texts of its resolutions) while the appellants have remained inexcusably passive and inactive since

1932, on which date the first order was rendered, and even since 1927, in which year the exclusive franchise was granted, wherefore it can not be reasonably held that compliance of the order during the period of one or two months of the appeal may cause damages to said appellants even comparable to the damages which the supersedeas would cause to the petitioner, that being an additional reason for which this Honorable Court should deny the supersedeas prayed for.''

A communication of January 4, 1938, addressed to the Public Service Commission contained the following statement:

''3. That the petitioner has been the object of unfair competition from hundreds of public cars, in the transportation of passengers, in open violation of the terms of the final order of this Commission, to which reference is made in the first allegation, and of the franchise granted to this petitioner by this Commission, on April the 9th, 1927; and at the present time such illegal competition reaches such great proportions that the petitioner can not resist it; and, notwithstanding the efforts exerted by this Commission and by the Insular Police forces to prevent it, due to certain interpretation which has been given to the terms of the final order of this Commission, as amended on March 16, 1935, it has not been possible to obtain the conviction of the violators of said order, in detriment of this petitioner, who has been thus daily deprived of more than twenty-thousand passengers, which represents a decrease in its income of at least one thousand dollars.''

The order of the Commission, after setting forth the contents of the bus line's complaint, reads in part as follows:

''This Commission, in view of the reasons stated in the petition filed today by the White Star Bus Line, Inc., and having notice of the facts alleged, by virtue of the reports made by the inspectors of this body as well as by virtue of the decisions of courts of justice in those cases which involve infringements or violations of the final order, as amended on March 14, 1935, and considering also the franchise granted to the petitioner on April the 9th, 1927, and approved by the Governor of Puerto Rico on April the 12th, 927;

''Hereby resolves and orders that said final order rendered by the Commission on October 15, 1932, as amended on March 16, 1935, be amended, so as to read as follows: . . .''

820

The order of the Public Service Commission and the complaint on which it was based are of even date. We do not find in the record any reports by the Public Service Commission's inspectors during the period between the amendment of 1935 and the amendment of 1938. If the order be construed as a finding to the effect that the bus line was losing more than $1,000 daily, the obvious inference is that the competing public service carriers were earning a like amount which they would have lost without the protection of a supersedeas. The bus line was protected to some extent at least, by the bond which appellants furnished as a condition precedent to the operation of the interlocutory order as a supersedeas. The bus line raised no question in the district court as to the sufficiency of that bond. The district judge had before him no satisfactory basis for a finding that the bus line would suffer any greatly disproportionate injury as a result of the interlocutory order.

We have assumed with counsel for the bus line that the district judge was not bound to issue an interlocutory order as a matter of right. Upon that hypothesis we find no clear abuse of discretion and no satisfactory reason why the result should be disturbed on certiorari.

The writ of certiorari will be quashed and the case remanded.

Mr. Justice Córdova Dávila took no part in the decision of this case.